Good morning, my name is Scott Embledge. I represent the plaintiff class, the appellants in this case. I'd like to reserve three minutes for rebuttal. What do we have left on the clock? For UPS to prevail on summary judgment in this case, they had to overcome two substantial obstacles. The first was they had to show not just that they had more polished evidence or they had weightier evidence, they had to show that they had undisputed evidence to satisfy each of the elements of the executive exemption. The second obstacle they had to overcome was the presumption under federal law, and more importantly in this case under California law, that hourly employees are entitled to overtime unless those employees plainly and unmistakably fall within an exemption to that general rule. UPS didn't overcome either of those obstacles. Can I ask you a couple of somewhat preliminary questions? This is a class, right? Yes. A class, actually. And there's no question here of class decertification or splitting class into subclasses or anything like that, so it's not before us, it wasn't argued below. That is not before you. We raised that point in our reply brief as a way that we were suggesting the argument about representative evidence was an end run around that, but no, before you there's an... I'm just having a little trouble conceptualizing how you can have... I mean, these are at least three different kinds of positions, right? Yes. The rest of the class, so at least potentially three subclasses. Maybe not, but at least there's theoretically some differences. And also there are multiple locations, right, that UPS has offices, and policies might could be different in different places. I'm just wondering how you would try this case if you went to trial. This would be sort of the generic FTS position? Well, I think, Your Honor, that goes to sort of the heart of the appeal in the sense that... Oh, I'm so glad. I thought I was out of the periphery, but okay. Well, I'm trying to steer it back. No, no. I mean, obviously it bears on the heart of the appeal because I'm trying to... Well, because the heart of the appeal is do these FTS, do they exercise discretion and independent judgment? And one of the things that the evidence showed is that the constraints on them by the manuals, the policies, the practices of UPS that are so uniform and so mandatory and so incredibly detailed make their job routine, repetitive, and not one that exercises independent judgment. And I think that gets to your point that while conceivably you could have many companies where you have different centers of operation and people operate differently in those different centers and they're not all alike, here the existence of those policies and practices and the incredible level of detail that was explained in the declarations by the class members and the attachments to those declarations, that makes the jobs uniform at the different centers and the level of discretion and independent judgment exercised. Let me pick on one piece of evidence. There is that survey that they do asking people about their jobs. This is not the one prepared for litigation, but the one where they ask people questions about their job. And many people said, no, I don't have any discretion in my job, and if I think that the job ought to be done differently, it would be done better by my lights rather than what UPS says, I couldn't change it. But some people, 10% or 15%, I forget what exactly the numbers, thought that, yes, we could do that. If I thought that I had a better way of doing it, I could do it. And I'm just wondering if there's a nontrivial number of people that feel that way. Is it really a uniform job? Well, I do feel like we're re-arguing the class certification motion rather than the summary judgment. I realize it's not before us, and I'm trying to, I'm accepting that we're not going to de-certify the class. I'm just wondering how this bears on. Well, every employment class, which involves a great number of people, has some variation among the employees. Some people who will feel differently. Some people who may have a supervisor that lets them do things that other supervisors don't let them do. But in the class certification issue here, there were enough common questions of fact and law to make the class certified, and that wasn't appealed. So if you accept that level of commonality, and you see that there is the evidence that you pointed to, Your Honor, about comments outside of litigation context, comments submitted in a regular way to UPS that say, I can't do my job, I can't do my job effectively, I'm too constrained by the procedures. I could, you know, micromanagement, micromanagement, micromanagement, you see that word throughout those comments. You see people saying, this would run a lot better if I could terminate the people who were interfering in the running, but I have no ability to do that. This could run a lot better if I was allowed, because I know what's going on out there on the street, if I was allowed to change the practices here, rather than have the practices dictated to me by the headquarters in Atlanta, who don't really know what's going on the street. Let me just ask it a little bit different way, because I'm having a little trouble. You can't ignore the representations made to obtain class certification, and you can't take positions inconsistent with that in your trial evidence. Do you agree with that? Yes. Okay. So, once the class is certified, listening to your first response to Judge Kaczynski, it sounds like your view is really that as a matter of law, based upon the procedural manuals, that these are jobs, that that so constrains any discretion, that almost as a matter of law, that's it. Is that your position? That's fair. Okay. So, is that your evidence at trial? It's basically the procedures? Or how do you put on evidence of trial? What individual evidence do you put on at trial? Because I'm having some trouble. It's not a pattern and practice case, and it's not a typical discrimination case. It's a misclassification case, or at least... Yes. Okay. So, what, then, is the evidence that you put on at trial beyond, in conceptual terms, beyond the procedures and manuals themselves? Well, we call class members, class members to testify about how the procedures and manuals are implemented, and that in their, just as we did at summary judgment with the declarations from class members, to show that their day-to-day work is completely constrained, and that their ability to exercise judgment over matters of significance doesn't exist. So you would have both the policies and procedures that exist system-wide, and you'd have the evidence from the individual class members to testify as to how, in the real world, those policies and procedures work. So, so long as you had one class member who could come in and testify by declaration, would that defeat summary judgment, in your view? Well, if the, we didn't have that. We had a dozen. No, we have ten. We had a dozen class members, plus we had the ERI comments, plus we had the Spain survey, but... Well, let me just stop there. Sure. The Spain survey, I thought the judge said, was pretty much unusable. The judge, well, no, the judge didn't say it was unusable. The judge didn't exclude the Spain survey, but the judge said there were only a few parts of the Spain survey that were, had any probative value at all and found that. Right. So it wasn't a question... He made some kind of derisive comments about that. He said it was essentially useless. Yes. Okay. So that's Spain survey. Then the second major piece of evidence are these informal comments that you were talking with Judge Kaczynski about, correct? Yes, ERI. And the judge's position on those was what? The judge recognized that they were probative in some ways, but had trouble with the fact that there was no proof that they were representative of the class. And I'm not exactly sure what the district court meant by that. Obviously, those comments were produced by UPS. They reflect comments by hundreds of class members from the geographic location that this case involves. If what he meant by representative, that they weren't randomly sampled or they weren't statistically representative sample, I don't think that's the standard of, on some review, I think that needs to be satisfied. We've shown that hundreds of class members submitted these comments, dozens of them from supervisors who say, I can't do my job, things have changed here. But he basically says they have some value. Yes. So they're basically on the table for summary judgment purposes in terms of having some evidentiary value. I agree with that. Okay. And then your third category of evidence are these various declarations. Yes. And where did the judge go wrong in addressing those? Well, the judge really didn't address those. The judge dealt with the class representative's deposition testimony. That's Mr. Marlowe? Mr. Marlowe, yes. And Mr. Marlowe submitted a declaration as well. But the judge did not analyze the other declarations. There were 11 of them, and they're lengthy. Did the judge flip-flop on you? Didn't you make a motion for summary judgment and have it denied because there was material dispute on the facts? Yes, that's exactly right. And having said there's a material issue of fact on your motion, then on the opposing side's motion there's no material issue of fact. Is that where we ended up? That's absolutely where we ended up, Your Honor. And that's one of the things that I find puzzling on a summary judgment standard. The judge didn't exclude the Spain survey. The judge said it's of very limited probative value on just a couple of questions. The judge said that the ERI comments were of some probative value. The judge really didn't address the 12 declarations that we submitted. That's evidence. That's evidence that creates a triable issue of fact here because we've got class members, we have survey responses that show constraints on discretion. Did you ever get a chance to challenge the survey experts under Daubert? Pardon me? Did you ever get an opportunity to challenge the expertise of the alleged experts on statistics and so forth under the Daubert test at summary judgment? It was UPS that was challenging the Spain report and has again challenged to try to do a Daubert analysis here. The trial judge relied very heavily on expert testimony. Yes. My question is, did you ever get a chance to challenge that expert testimony? We, I'd have to defer to trial counsel, did we have, we did have an opportunity to challenge that under Daubert. Their testimony came in and we weren't raising that. How do you go about that at the summary judgment level? Pardon me? How do you go about that at the summary judgment level? Well, I mean, obviously you have an opportunity to depose witnesses and raise that issue, but it's not as if it were a bench trial, which is really what, when you read the opinion, it's an opinion that would seem to be an opinion stemming from a bench trial where a Daubert analysis could go on about experts, where a weighing of evidence could go on in deciding which evidence was more convincing. But we were at summary judgment. But on the other hand, just because it comes in under Daubert doesn't mean that there's still, it's not disputed evidence, correct? That's correct. We are saying that neither expert's survey was excluded under Daubert. Both were in there. And the judge looked at one and found it to be more probative than the other, found it to be less vague than the other, although the judge had questions of vagueness about some of the questions from the surveys on both sides. And instead of granting the inferences in favor of the party opposing summary judgment and holding the vagueness in their favor, the judge granted the inferences on the other side and said the vagueness of the plaintiff's survey expert would be credited against it, but not the vagueness of UPS's expert. And I see I'm almost out of time, so I would like to reserve some time for rebuttal unless there are other questions. Yeah, we've used up your time. I think we'll give you a couple more minutes for rebuttal. But answer one more question for me. You are not appealing the denial of summary judgment in your favor, right? We appealed it. We did not pursue it. We did file a notice of appeal. I only mean before us, now is not. That is correct. You are seeking only a review and for trial. That is correct, Your Honor. Thank you. We'll give you two minutes for rebuttal since we used up your time. Thank you. Good morning. My name is Kirby Wilcox. I'm with Paul Hastings, Janofsky & Walker, representing United Parcel Service in this appeal. United Parcel Service presented Judge Pregerson with representative evidence based on 260 double-blind surveys conducted by field research, 114 pre-litigation job activity analyses conducted by applied psychological techniques, 30 time and motion observations conducted by right management. Could I just stop? Please. We have read through the record, and you have some very impressive expert evidence. But the question really at this stage is whether, in fact, there are factual disputes because although your evidence shows one thing, their evidence disputes that. And in the record, you have the judge saying things like, well, the comments are of limited value, speaking to the ERA survey, or there's a problem with these because they give these comments without context, et cetera. And that seems to me to be almost like the sense you get is that the judge was very impressed with your evidence because it's very impressive, statistically significant, done in all the normal survey techniques. The judge is very impressed with that evidence, but it seems in reading his opinion and in looking at the evidence he did let in, which is now unchallenged, it's in under Daubert, that he's weighing the evidence. Why is that not the case? We don't believe that Judge Pregerson weighed and balanced the evidence, Your Honor, because we believe that what Judge Pregerson did is look at whether or not the evidence provided by our opponents was representative on the issue of whether or not there was a class-wide misclassification. And most importantly and most directly responsive. Why does representative matter? The reason why, Your Honor, is their evidence did not bridge the logical gap between the circumstances of an individual and the circumstances of the class. It's true. The evidence that they could have, and we did, they opposed our expert, we opposed their expert. For the purposes of this, it's all in. The question is whether or not it's responsive. The question is whether or not it's materially responsive. Let's look at their expert then. It's in, right? Yes. Presumably we now have a jury sitting there listening to this. Why couldn't their jury believe their expert and discount your expert? We believe that a reasonable... Let me make it even more specific. Let's say a jury did that and you were here on appeal. Would we say that's evidence that would require us to set aside the jury's verdict? Absolutely. And the reason is... Explain to me why. There are at least three reasons. First of all, the testimony, the evidence from the ERI survey is inadmissible hearsay. Second... I'm sorry, but that's no longer on the table. For the purpose... It's in. Even saying it just wastes our time and insults our intelligence for you to even raise that. A second... So it's in. It's before the jury. The jury has now ruled against UPS. We are now on appeal reviewing it. And you tell us why we have to set aside that verdict. I'll focus on two reasons, Your Honor. First, because there's no evidence in the record... I always start off with the one that doesn't work. A good strategy. Thank you, Your Honor. I want to focus on two, which is there's no indication that any of these comments came from a member of the class. None whatsoever. Second... So what? Well, because this is a class involving full-time supervisors, the comments regarding the activities of full-time supervisors, which these ERI comments purportedly represent, are not assuredly from them at all. But doesn't that go to the weight? Doesn't that go to the weight of it? No, Your Honor. It goes to whether or not it even belongs in the lawsuit. Right, but see, here's the difficulty. It's in. If the judge let it in. Now, that may be a point on appeal. It might have been improperly let in. But at this stage of the proceedings, it's in. So we have to kind of deal with it. So assume it's in. You have to deal with it. Now what do we do with it? As if it's in. So saying it shouldn't have been let in doesn't work. It won't help you here. So you've now typed twice, and both of them have been, it shouldn't have been let in. You're just fighting the question. I mentioned both of those, Your Honor, only because the review of the record is de novo. Why don't you get to what you mean? Because, Your Honor, there's no context, there's no indication that those comments are representative of the whole. If we look at a You see the jury over there? When you face the jury, you can tell them that. You can tell them why this is not a good survey. They shouldn't believe it. This is the kind of argument you make before a jury. The reason why no reasonable juror or jury could conclude that full-time supervisors were misclassified as a rule using that evidence is that all it addresses is an undisputed fact that full-time supervisors work under company policy and procedure. It doesn't address the issue that Judge Pregerson had to wrestle with, which is within the context of those policies and procedures, what is it that they do? What is the realm of discretion and independent judgment that is available to them? And why don't the declarations, whether you like them or not, why don't they answer that? Because all that they address is the existence of policy and procedure, and laments by those who are subject to those policies and procedures that they exist. There is a lament and a wish for greater operating freedom. But those comments by themselves don't address the central issue before the panel and before Judge Pregerson, which is within the realm in which they were permitted to operate, was the freedom satisfying of the obligation, the requirement, the exercise, discretion, and independent judgment? They're completely nonresponsive to that question. You're talking about the individual statements? Excuse me? Yes, Your Honor. You're talking about the individual statements? Yes, Your Honor. I don't know. That's not how I read them. You want to take one up and we can talk about it? I've got the declaration of Bobby Flynn, for example. But you take up whatever you want. Your Honor, whether we're talking about an individual declaration or whether we're talking about an ERI comment, the question is... I do not regularly or customarily exercise discretion or independent judgment as a matter of consequence or significance to UPS, as the decisions I make are dictated by UPS's comprehensive specifications. That sounds like evidence to me. Your Honor, what that is testifying to is a conclusion. I don't exercise discretion in independent judgment as to matters of significance. Did you come up with evidence as to things that they actually have discretion on, sort of a list of things that supervisors can do? For example, can they make binding recommendations that people be fired? I realize they can't fire anybody because it's a union shop and you can't just fire somebody, right? But are they in a position to say, you know, this employee is no good, not to be fired? And management usually carries through with those? We have provided that evidence, Your Honor. We have provided evidence from Mr. Marlowe that in his capacity as an on-car supervisor and in his other full-time supervisory capacities, he made recommendations with regard to both hiring and firing and also with regard to promotion. And were they followed? They were followed. He believes that they were followed. That's his testimony. But we have a lot of that evidence. We have a number of UPS people, like Ms. Nelson says she talked about, whether somebody should hire a package car driver, et cetera, et cetera. But I guess what I'm left with is wondering whether all of this is just a constellation of evidence because maybe it's undisputed that their recommendations bear some weight in personnel decisions, but that wouldn't answer the whole question of the exemption, would it? It would answer, Your Honor. Part of the exemption. It would answer part of the exemption. But on the hire-fire situation, Connemore's testimony is that the FTS cannot unilaterally hire an employee or put them on the payroll, and the judge jumps into the conclusion that although the plaintiff has pointed to evidence, there are no special procedures in respect to the hire-fire recommendations, says he has not provided evidence tending to undermine the testimony that the referrals are nevertheless given special weight. Isn't that a factual dispute? No, Your Honor. In every case, the FTS who makes the recommendation, we can presume, is given special weight? Let's establish the legal standard. The legal standard isn't the absolute power to hire-fire or to make recommendations that affect someone's status. The question is whether or not those recommendations are given particular weight. That's what I just said. How can you say that they're given special weight in all of the recommendations? We have the testimony from Stacia Familio-Hopek. We have the testimony from Mike Marlowe. But how do we know that's representative? It's like every time we have a piece of evidence that you don't like, it's not representative. But if you do like it, it's representative. That's where I'm having some trouble. And maybe a different way of trying to understand your case, what would they need to do to defeat summary judgment in your view? They would need to provide representative evidence that misclassification of full-time supervisors was the rule rather than the exception. And what we provided... They would simply have to raise an issue. They would have to... What do you mean by representative evidence? I mean, everything they raise you say is not representative. But like Judge McKeown, I have some difficulty understanding what you mean by representative. Why don't you like their evidence? What is it? Not sort of in generic terms, concrete terms. What would they have to present, in your view, to defeat summary judgment? I mean, with the saying X or declaration. Be very specific about this. They would have to produce evidence that bridged the logical gap between the circumstances of an individual and the circumstances of the class of which they were part. Do you understand my question? I do. Okay. I don't want you to say they need to present evidence showing this. I mean, tell me what a witness would have to say or what a piece of paper would have to say. That would, in your view, say, okay, we give up, we go to trial, there's no summary judgment. Let me give you two examples, Your Honor. If the class were... Do your best. If the class were smaller... But the class is not small. If the individual had said... Pick one that applies to this case because we are running out of time. An example, Your Honor, would be if there were uniform procedures that constricted, that dictated every aspect of what someone did. I think you're talking about this case. It's responsive. You mean every aspect? Like when you go to the bathroom? I mean, there is no such thing. There's no such job in America that I'm aware of. That is our point, Your Honor, is that there are significant degrees of freedom for a plaintiff to defeat... So I've asked you a plain question. What would a witness have to say? What, in your view, would they have had to present to be entitled to a trial? Do you not get a trial in a central district? They would... On anything. I mean, tell me, what would they have to present? I mean, imagine a super expert or imagine a super witness. So, you know, tell me what it is you expect of them to allow them to get before a jury. There would have to be evidence that was predictive of the circumstances of the whole. But Your Honor raised this issue with opposing counsel with multiple different positions in multiple different facilities. They would have to provide evidence that addressed the circumstances of... See, that is kind of a bit of lawyer talk. When you're putting on a trial, you get down to the basics, like who's going to go up there and who's going to testify and what are they going to say and what are the documents. So one possibility you allude to is they could have an expert who did this, correct? Yes, Your Honor. But you don't need survey testimony in order to defeat a class action summary judgment, do you? No, Your Honor. They could produce... It would be a person. What kind of a live person could they have who's not an expert? Because they do have a survey, although you don't like it, but... We don't believe under the circumstances of this case, and that's the critical issue. It's the circumstances of this case that any one individual can speak for the whole. Well, wait a second. So there's no way for them... I mean, I don't know if they'll win or lose, but there's basically no way for them to win, you're saying? No, there is, Your Honor, but by producing hundreds of witnesses, but that's not the way trials of class actions are handled, but it would take hundreds of witnesses if there were not going to be a survey. There would have to be evidence from multiple individuals who could address the circumstances of the whole. Well, that happens. It can happen, but it does happen. You don't always rely on surveys in class actions. You take representative groups, and you can have so many of this and so many of that. I mean, a guy comes in and he says, I supervise package card drivers, and the reality is I would like to be able to have them do X and Y. I can't. Here's policy number A. I'd like to be able to do Y. I can't. Here's policy number B. If I were a manager or a supervisor, here's what I would do. I can't do any of those things. I've complained to Ms. So-and-so about that. She says, read the book. Would that be admissible? It would be admissible, Your Honor, but it's not addressing the question whether or not this class of individuals, we're in a class context where people have elected not to opt out. They're in together. Their fortunes are linked. They've thrown their lot in with the whole, and the question is whether or not that. But he's basically saying, look, here's the practical application. I mean, they have all these rules, and they say that the rules are only the backdrop against which I may exercise discretion. I'm telling you this ain't true. So why isn't that? The jury then says, well, you know, we've got to figure this out. And you bring people in that are, you know, I represent package car drivers in big cities. I represent, I'm a supervisor in this kind of a situation. I'm a supervisor in this. You wouldn't need thousands, but you could have representative people, no? Your Honor, I believe that the consequence of the rule that you're articulating is that in a class context, one declaration, irrespective of its link to the fortunes of the class, is sufficient to defeat summary judgment. That's not the rule. That's not the rule under a state. I agree with you. That would not be the rule, and that would be a bad rule because anybody can always come up with one declaration. And here we have 12. Well, but you also have this sketchy but admitted two surveys, correct? The two surveys, neither of which are addressing the degree of freedom with which full-time supervisors perform their duties. Why isn't the questionnaire, the ERI survey pretty good evidence? Employee Relations Index Surveys. They're non-litigation related, so they pass the most important DARPA test in that they prepare for litigation. And they're pretty revealing. They say things like, gee, supervisors should have more discretion. They have two hands time. Pretty good evidence, it looks to me. What's wrong with that? Because we have evidence indicating that 82% of the members of the class are exercising choice, choices when making their decisions on a day-to-day basis. And what we don't have... You know what we call that? We call that conflict in evidence. And you know what conflict in evidence leads to? Your Honor, it's not a... It leads to a jury. It's not a conflict in the evidence. It's not enough for you to say we have better evidence. We're going back to where we started. It's not enough for you to say we have really good evidence. I'm not so impressed with your evidence. I thought it was a little weak. But it's all right. I mean, a jury could... It's probably admissible. I thought some of your survey questions were sort of loaded and didn't really go to what this case is about. But, okay. Let's say it's admitted. It's not good enough. You have to show that what they presented is dirt. The rational jury could not come out their way. And the fact of the matter is there isn't very good evidence on either side. Your expert's evidence is questions. Well, I can just see him getting torn apart at the top with some of those questions. We believe, Your Honor, that the burden was to show that no reasonable juror, looking at the representative evidence, could reach the conclusion... How do we tell every juror, every case that we submit to a jury, assuming that it's passed the Daubert screening but it's going to the weight of the jury? Now, jurors, you do not have to allow this testimony. But you are not bound by it. To give it such weight as you consider it to be worth, taking into consideration experience, education, training, and the reasons for the opinion. And that's all jury work. And they can have experts coming up. These could be all hired guns. They could have all sorts of matters that could be argued and submitted to a jury. Why, at summary judgment, even though the evidence is there, that it has to be accepted? Period. I believe, Your Honor, that your question goes to the whole jurisprudence of class actions. The admonition from the United States Supreme Court and from the California Supreme Court is that these matters be addressed with representative evidence for the reason that we're not going to have 1,200 people testify. And when United Parcel Service plays by the rules and submits that evidence... You're not answering my question in respect to expert testimony, being a jury question. The expert testimony from Mary Spain, opponent expert, does not create a triable issue, Your Honor, because her questions go to an anarchy test, in our view, which is the freedom that the experts don't have, excuse me, the full-time supervisors don't have, not that which they do have. So it's not responsive. And at summary judgment, we think that the panel and the district court judge can look at whether or not the evidence is responsive. Would you be asking us, in effect, to say that that is inadmissible? We're not at this point arguing that. Because that's what it comes down to, because once it's in, then I'm left like, well, these aren't the greatest questions, I'm going to benchmark them against those. On the other hand, she has a point, maybe you disagree with it, but I'm kind of feeling like we're in a box because even if we accept your view that the Spain analysis is deficient, that would go to the weight once it's been admitted, correct? Your Honor, I believe it goes to whether or not there is a genuine issue of material fact. Correct. And we don't believe that it creates a genuine issue of material fact because even though it's been admitted, no reasonable juror could look at a series of questions that say, I can't do this and I can't do that, and conclude from it what they, in fact, do do. You had a parcel service presented the only material information regarding what full-time supervisors do do. But the jury just listened to all that and said, wow, that's a significant amount of things they can't do. If you have a significant amount of things you can't do, it follows that there definitely can't be a significant amount of things you can do. So it's just the flip side of your argument, and a juror couldn't determine that, couldn't they? I don't believe that a reasonable juror, Your Honor, looking at the testimony of ten individuals, could conclude that the rule at United Parcel Service was that full-time supervisors are routinely misclassified. That's the issue. If you go to trial, you'll have another opportunity to argue the admissibility of this evidence, I assume. Yes, Your Honor. But the question before the panel today, and one we believe that it can direct itself to, is whether or not Judge Pregerson spent an inordinate amount of time, which we believe that he did, through multiple motions and in a 40-plus page opinion squaring up. Well, we did too. So does that make us less right than him? There's three of us that spent probably equal time with Judge Pregerson, so that probably isn't a benchmark of how this ought to come out. Well, I do want to point out, Your Honor, that this is not an opinion that was lightly reached. I think that's fair to say. I think it's a very thoughtful and extensive recitation of his views. And I think that what the Court may look at is whether or not the testimony of Mr. Marlowe. The Supreme Court never gives me any extra points when they reverse me after I wrote a very thoughtful opinion, what I thought was a very thoughtful opinion. You get no extra points for being thoughtful, if you're wrong. Well, I should say, Your Honor, that... It's just the way it is. It's an issue of the hierarchy. Well, Your Honor, I do believe that where you have the testimony... Well, you have already taken up more than your time. Let me give you two words of advice. You have two minutes of rebuttal if you choose to take it. I have a question for rebuttal. Well, in that case, you had better take it. It's always perilous to stand up for rebuttal. As I talked to our new chief judge-to-be, when he visited us, I said, as trial judges, we don't mind getting reversed, but for God's sake, don't remand it. Now, what I'm asking you is, supposing you get this summary judgment set aside. Now, you're going to try this case. How are you going to show your material issues of fact, from a pragmatic point of view, in a class action of this size? Just give me a nutshell of what you've got in mind. Well, I can... The best way I can respond to that is in the last class action that I tried, involving an employee class. And really, as a practical matter, it comes down to working out, with opposing counsel, and through motions in limine, with the judge, about how many witnesses will be called. And what we did here was not just submit 12 declarations from a bunch of buddies that all worked in the same hub. We submitted declarations from people that worked in various locations, in various positions, and were representative of the different jobs that were at issue. You're talking about declarations as opposed to live witnesses that went to cross-examination in a trial before a jury? No, I'm sorry. You're talking about the reality of the remand. I shifted back to appeal. You're asking for a jury trial, aren't you? Yes. Don't talk about declarations then. Understood, Your Honor. What I'm saying is, we would submit the witnesses that are the same types of witnesses as were in the declarations. Now, if we concluded that 12 wasn't enough and that we needed 24, we'd call 24 to make sure that we've covered all the bases, to make sure that we've put on our best case to convince the jury. How many subclasses do you have? There are no subclasses. None at all? But there are three different types. In different job titles? Three, Your Honor. Okay. There are full-time supervisors that handle three different types of operations and in different locations. So I assume you would have live witnesses from each one of those categories. Exactly. Is expert discovery closed? Yes. All right. Too bad for both sides. I understand the challenge. I read both these surveys and I thought they were really awful. Well, we don't all necessarily share the same view. But that's not our job. On the ERI comments, I do want to make the point that those ERI comments were produced by UPS in the Rule 26 disclosures. They are not purportedly from potential class members. They say on their face, and they were produced because they are from the supervisors. And going through those comments, I think it's clear that there is a general theme from those supervisors that they're completely constrained. And the exhibits to Mr. Marlow's declaration reinforce that. Thank you. You've taken more than enough. I'm giving you the same two-word advice I gave opposing counsel. Settle. Case is argued. We'll stand submitted. Thank you. We'll next hear argument in all those mandamus cases, Garcia-Aguilar and Manjaris Cervantes and Mejia Lemus.
judges: Kozinski, McKeown, Jones